LAMBERT, ROBERTS, JAQUES &
SCRIVNER, Appellee,

v.

Frank CRABTREE and LeMoine Crab-
tree, Husband and Wife, Appellants.

No. 50122.

Court of Appeals of Oklahoma,
Division No. 1.

July 3, 1979.

Rehearing Denied Sept. 4, 1979.

Released for Publication by Order of
Court of Appeals Aug. 22, 1980.

Stamper, Otis & Burrage by Joe Stamper,
Antlers, for appellee.

Rhodes, Hieronymus, Holloway & Wilson
by Russell B. Holloway, Gary C. Bachman,
William C. McAlister, Oklahoma City, for
appellants.

ROMANG, Presiding Judge:

The Defendants-Appellants (Defendants)
appeal from a judgment for the Plaintiff-
Appellee (Plaintiff) notwithstanding the
verdict of the jury in favor of the Defend-
ants in an action by the Plaintiff to collect
on a contract for attorney fees.

On May 6, 1969 the parties entered into a
contract for legal services to assist the De-
fendants in obtaining majority stockholder
control of the Ada Coca-Cola Bottling Com-
pany. In pertinent part, the contract pro-
vided that the fee would be

> [i]n the event clients [Defendants] secure
> the control of the majority of the stock of
> the Ada Coca-Cola Bottling Company by
> any means whatever [defined elsewhere
> in the contract as "any lawful and ethical
> means . . ."], at any time thereafter
> [after January 1, 1972] the sum of $75,-
> 000.00.

\* \* \* \* \* \*

> In the event clients fail in their attempt
> to secure control of the majority of the
> stock of Ada Coca-Cola Bottling Compa-
> ny, then attorneys will receive a fee
> based upon the minimum fee schedule
> attached hereto, provided however such
> fee shall in no event exceed the sum of
> $10,000.00 . . . .

A lawsuit was filed in September, 1969.
Although the lawsuit resulted in a verdict
for the Defendants on January 26, 1972, a
settlement agreement was entered into by
Plaintiff on behalf of the Defendants prior
to the rendition of the favorable verdict.

Under the settlement agreement the Defendants were to sell their entire interest in the bottling company rather than secure majority control. The Defendants were told they were bound by the settlement agreement and executed a contract to sell on January 27, 1972. Based on this result the parties to our lawsuit agreed or recognized that Defendants owed a fee of $10,000.00. At some point in time, the Plaintiff rendered a written statement for this amount which stated:

> . . . provided, however, that clients understand that in the event they obtain control of Ada Coca-Cola Bottling Company at anytime, they will be obligated to attorneys for the additional sum of $65,000.

On January 29, 1972 (2 days later) the Defendants contacted Plaintiff and asked it to relay a different arrangement whereunder the Defendants would buy out the other party rather than vice versa as agreed to in the contract settlement signed on January 27, 1972 but not yet consummated. Plaintiff did and the offer was eventually accepted and consummated.

At some point on or after January 29th Plaintiff advised the Defendants that if this offer worked the Defendants would owe the additional $65,000. Defendants objected strongly and have refused to pay, giving rise to this action.

The case was submitted to the jury on instructions not challenged herein. The narrow factual issue presented to the jury was "whether, under the terms of the contract between the parties, the Plaintiff became entitled to an attorney's fee of $75,000.00." Instruction No. 19, Record p. 123. To determine this the jury was told in the same instruction:

> [i]f you find by a preponderance of the evidence that as a result of the performance of this contract between the parties, the plaintiff became entitled to an attorneys [sic] fee of $75,000.00, then your verdict shall be for the plaintiff . . .

The jury returned a verdict for the Defendant and the Plaintiff filed a motion for a judgment n. o. v. After filing a set of findings on facts not controverted (some of which apparently are controverted) the trial judge held a hearing on the motion and ultimately sustained the motion giving the Plaintiff a judgment.

It is clear on appeal that the trial judge had a clear grasp of the issues at hand. The problem was simply whether the fee contract was terminated on January 27 such that the services rendered thereafter were pursuant to a different and implied contract and whether, on the facts, a jury question on this issue was presented. Holding the conclusion was purely legal that the post-January 27 services were pursuant to the written fee contract, he entered judgment accordingly. In this we think he erred.

It is very clear that the sole question involved whether the events of January 27th evidenced a discharge of the written contract. If any reasonable interpretation of the record would support a conclusion that the contract was discharged, then the issue was for the jury. A party is entitled to a judgment notwithstanding the verdict if a motion for a directed verdict should have been sustained for the same party upon consideration of the pleadings and evidence. 12 O.S.1971, § 698. *Stillwater Mill Co. v. First Nat. Bank of Wewoka*, 391 P.2d 807 (Okl.1964); and *Stanfield v. Lincoln*, 150 Okl. 289, 1 P.2d 387 (1931).

The parties have extensively briefed various issues of law. Generally speaking, however, there is remarkable agreement on the legal principles involved and honest dispute on their application.

The essential case for the Defendant is that the contract was discharged before Plaintiff rendered the post-January 27th services. The only basis for discharge urged is performance through the clause providing for fees "[i]n the event clients fail in their attempt to secure control of the majority of the stock . . . ." The question is the effect of an alleged agreement on January 27th on the fee for the settlement signed but not performed on that date, since it appears that the $10,000

plus costs which Defendants admit they owe was not fully paid prior to the new services. No rescission by mutual agreement, release or accord and satisfaction are argued or were presented to the jury. See list of methods of discharging a contractual obligation in § 385, Restatement of Contracts. See also 15 O.S.1971, § 231. It is unclear why various approaches to discharge were not argued.

Looking at the evidence most favorable to the Defendants we find that they executed the settlement agreement unwillingly but because they were told they had to. It was testified that on January 27th the Defendants were told they owed the "minimum" fee plus costs and expenses. Of the $10,000, $5,000 had been paid. When the Defendants considered the situation they decided to make the offer to buy out the others and contacted the Plaintiff on January 29th. On February 2nd the Plaintiff told the Defendants by telephone that the other party had orally accepted the offer. On meeting later Plaintiff raised for the first time since January 27th the prospect of the additional $65,000 fee to which Defendants strongly objected.

Under these and other facts the jury apparently decided that the Plaintiff had not shown by a preponderance of the evidence that the Plaintiff had become entitled to $65,000 "as a result of the performance of the contract . . . ." Instruction No. 19, *supra.* The jury did not have an instruction on discharge. They were instructed that "[p]erformance . . . is the doing of the acts required by the agreement at the time and place and in the manner provided. Substantial, and not exact performance accompanied by good faith is sufficient performance of any contractual duty."

The only ground upon which the motion for a judgment notwithstanding the verdict could be sustained is that no reasonable interpretation of the facts would sustain the jury verdict under the instructions in this case. We believe the hard and narrow issue of whether the fee contract was performed and discharged on January 27th was a factual issue to be left to the jury. While the instructions do not expressly address discharge they do define performance and authorize the jury to award the $65,000 fee if they find the Plaintiff performed under the fee contract. While the instructions do not make explicit that the Defendants need not acquire majority ownership as the direct result of Plaintiff's efforts, which is clearly the meaning of the contract, the error was not raised and is not fundamental. Properly applied the instructions adequately inform the jury.

The trial judge agonized over this very question as we have. But on reflection we believe our analysis comports with the law and preserves the sanctity of the jury system. The judgment notwithstanding the jury verdict is reversed and the case remanded with directions for entry of a judgment on the jury verdict.

REVERSED AND REMANDED WITH DIRECTIONS.

REYNOLDS, J., concurring.

BOX, J., not participating.